No. 15-1016

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

―――――――――――――

## PROFECTUS TECHNOLOGY LLC,

*Appellant*,

v.

## HUAWEI TECHNOLOGIES CO., LTD., ET AL.,

*Appellees*.

---

Appeal from the United States District Court for the Eastern District of Texas,
Case No. 6:11-cv-00474-MHS, United States District Judge Michael H. Schneider

―――――――――――――

## CORRECTED NON-CONFIDENTIAL BRIEF OF
## APPELLANT PROFECTUS TECHNOLOGY LLC

―――――――――――――

Thomas C. Wright                      Steven E. Ross
**CUNNINGHAM SWAIM, LLP**             **ROSS JOYNER PLLC**
7557 Rambler Road, Suite 440          1700 Pacific Avenue, Suite 3750
Dallas, Texas 75231                   Dallas, Texas 75201
Telephone:  (214) 646-1495            Telephone: (972) 661-9400
Facsimile (214) 613-1163              Facsimile: (972) 661-9401
twright@cunninghamswaim.com           sross@rossjoynerlaw.com

*Attorneys for Appellant Profectus Technology LLC*

---

Dated February 5, 2015                **NON-CONFIDENTIAL BRIEF**

## CERTIFICATE OF INTEREST

Counsel for Appellant Profectus Technology LLC certifies as follows:

1.      The full name of every party or amicus represented by me is: Profectus Technology LLC.

2.      The name of the real party in interest represented by me is: Profectus Technology LLC.

3.      All parent companies and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: none.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus represented by me in the trial court or agency or are expected to appear in this court are: Samuel Joyner and Steven Ross of Ross Joyner PC; Thomas C. Wright, Ross Cunningham, Steven D. Sanfelippo, and Alex Whitman, formerly of Rose Walker LLP and now of Cunningham Swaim, LLP; Martin E. Rose of Rose Walker LLP (no longer representing Appellant); Wesley Hill of Ward & Smith Law Firm (no longer representing Appellant).

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES .....................................................................v

STATEMENT OF RELATED CASES ....................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES ...........................................................1

STATEMENT OF THE CASE ................................................................2

STATEMENT OF THE FACTS ..............................................................3

    A.  The '308 Patent Covers a Mountable Digital Picture Display Frame. ..................................................................................3

    B.  The Accused Products Include Tablets That Can Serve as a Mountable Digital Picture Display Frame. ...........................5

    C.  The Court construes the term "mountable" as "capable of being mounted," and also interprets the term as requiring an "intrinsic feature for mounting." ...........................................8

    D.  The district court grants summary judgment in favor of Appellees, ███████████████████████████ ████████████████████████████████ ██████████████ ...............................................................9

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT ........................................................................................13

  I.  The District Court Erred By Construing "Mountable" As "Having A Feature For Mounting" Because It Imported A Limitation Unsupported By The Claim Language. .......................................13

    A.  Claim Construction Standard .................................................13

    B.  The lower court's construction of "mountable" as "having a feature for mounting" improperly imported limitations into the claims. The term should instead be given its plain and ordinary meaning of "capable of being mounted." .............................15

II. The District Court Erred By Granting Summary Judgment Because There Were Facts That, Viewed In The Light Most Favorable To Appellant, Should Have Prevented Summary Judgment. ...........................22

   A. ███████████████████████████████████████████████

   █████████████████████████████████ .......................................23

   B. A reasonable jury could find that ██████████████████

   ████████████████████████ ................................25

      1. Each of the accused products' ███████████████

      ██████████████████ By failing to

      consider this evidence, ██████████

      ████████████████████ the lower court failed to view

      the evidence in a light most favorable to Appellant and erred

      by granting summary judgment. ....................................26

      2. The lower court's holding that █████████████████

      ██████████████ contradicts the evidence and its own claim

      construction. ...................................................................31

CONCLUSION ...................................................................................32

CERTIFICATE OF SERVICE ..............................................................33

RULE 32(a)(7)(B) CERTIFICATION ..................................................33

An Addendum containing the Court's Final Judgment of September 15, 2014 and the Court's Memorandum Opinions and Orders of April 17, 2014 and September 8, 2014 is placed last within this brief pursuant to Federal Circuit Rule 28(a)(12).

**Confidentiality Statement**: The summary judgment briefing, record, and order in this case, which is provided in the accompanying Appendix and discussed in Parts B, C, and D of the Statement of Facts section and Part II of the Argument section, contained information and documents designated confidential or highly confidential under the district court's protective order. Those portions of this brief are being redacted in the nonconfidential version of the brief that is being filed pursuant to Federal Circuit Rule 28(d)(1)(B), and will be highlighted in the confidential version of the brief that is being filed pursuant to Federal Circuit Rule 28(d)(1)(A).

# TABLE OF AUTHORITIES

## Cases

*Comark Comm'ns, Inc. v. Harris Corp.*
    156 F.3d 1182 (Fed. Cir. 1998) ................................................................ 15, 16

*Douglas Dynamics, LLC v. Buyers Products Co.*
    717 F.3d 1336 (Fed. Cir. 2013) ........................................................................17

*Hilgraeve Corp. v. Symantec Corp.*
    265 F.3d 1336 (Fed. Cir. 2001) ........................................................................25

*Markman v. Westview Instruments, Inc.*
    52 F.3d 967 (Fed. Cir. 1995) ............................................................................14

*Medrad, Inc. v. MRI Devices Corp.*
    401 F.3d 1313 (Fed. Cir. 2005) ........................................................................19

*Ormco Corp. v. Align Tech., Inc.*
    498 F.3d 1307 (Fed. Cir. 2007) ........................................................................13

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005) ............................................... 13, 14, 15, 19, 20

*Pitney Bowes, Inc. v. Hewlett Packard Co.*
    182 F.3d 1298 (Fed. Cir. 1999) ........................................................................13

*Teleflex, Inc. v. Ficosa N. Am. Corp.*
    299 F.3d 1313 (Fed. Cir. 2002) ................................................................ 15, 18

*Thorner v. Sony Computer Entertainment America LLC*
    669 F.3d 1362 (Fed. Cir. 2012) ......................................................... 13, 20, 21

*Vitronics Corp. v. Conceptronic, Inc.*
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................................14

## Rules

Fed. R. App. P. 4(a)(1)(A) ......................................................................................1

## Codes

28 U.S.C. § 2107(a) ................................................................................................1

## STATEMENT OF RELATED CASES

Concurrent with the appeal of this matter, two separately-docketed appeals of cases involving the assertion of the same patents, *Profectus Technology LLC v. Motorola Mobility LLC*, Case No. 15-1018, and *Profectus Technology LLC v. Hewlett Packard Co.*, Case No. 15-1019, are currently pending. This Brief addresses the appellate issues pending in those separately-docketed cases as well.

## JURISDICTIONAL STATEMENT

The District Court had original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1). The District Court entered a Final Judgment in this action on September 15, 2014, and this appeal was timely noticed by Appellant on September 29, 2014. 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

I.    <u>Claim Construction</u>: Whether the District Court erred by construing the term "mountable" in the '308 Patent as "having a feature for mounting," thereby importing a limitation not supported by the patents or the language of the relevant claims.

1

II.    <u>Summary Judgment on Noninfringement</u>: Whether the District Court erred by granting Appellees' Motion for Summary Judgment on the grounds that the accused products did not infringe upon the '308 Patent.

## STATEMENT OF THE CASE

Appellant Profectus Technology LLC ("Appellant") is the owner of United States Patent No. 6,975,308 ("the '308 Patent"). The '308 Patent claims a mountable digital picture frame. On September 9, 2011, Appellant filed suit in the United States District Court for the Eastern District of Texas against a number of entities, including Apple Inc. ("Apple"), Dell Inc. ("Dell"), Motorola Mobility LLC and Motorola Solutions, Inc. ("Motorola"), Hewlett-Packard Company and Hewlett-Packard Development Company LP (collectively "HP"), and Samsung Electronics America, Inc. and Samsung TeleCommunications America, LLC ("Samsung") (collectively referred to as "Appellees"),[1] for infringement of the '308 Patent. Appellees are manufacturers and sellers of tablet computer devices.

Following a claim construction hearing on November 6, 2013, and the issuance of a provisional claim construction order on January 8, 2014, the lower court issued a Memorandum Opinion and Order containing its final claim constructions on April 17, 2014. That Order may be cited at *Profectus Technology*

---

[1] All of the remaining entities that Appellant filed suit against for infringement of the '308 Patent settled with Appellant during the pendency of the litigation.

2

*LLC v. Huawei Technologies Co., Ltd.*, No. 6:11-cv-474, 2014 WL 1575719 (E.D. Tex. Apr. 17, 2014), and a copy of the Order is included as an addendum to this brief. (APP. 0002-26).

Following the issuance of the Court's claim constructions, Appellees moved for summary judgment on July 28, 2014 on the grounds of noninfringement relating to the "mountable" limitation. In a Memorandum Opinion and Order issued on September 8, 2014, attached as an addendum to this brief (APP. 0027-33), the district court granted Appellees' Motion, holding that the accused products do not infringe claims 1, 2, 4–9, and 29 of the '308 Patent. Final judgment was issued on September 15, 2014 (APP. 0001), and Appellant subsequently filed a Notice of Appeal on September 29, 2014.

## STATEMENT OF THE FACTS

### A. The '308 Patent Covers a Mountable Digital Picture Display Frame.

Appellant's patent-in-suit, U.S. Patent No. 6,975,308, is entitled "Digital Picture Display Frame." (APP. 0055). The '308 Patent was issued on December 13, 2005, based on an application that was filed on February 11, 2000, which in turn claimed priority to a provisional application that was filed on April 30, 1999. (APP. 0055). The '308 Patent is directed generally to a digital picture display frame for displaying digital images. (APP. 0060 at 1:52-54). The images may be taken by a digital camera, scanned into a computer, or downloaded from the Internet, for

3

example. (APP. 0060 at 1:52-54). The invention of the '308 Patent permits a user to display digital images on a wall or desktop as though the images were conventional photographs. (APP. 0061 at 3:48-53). Figures 1 and 4 of the '308 Patent are reproduced below:



Figure 1                                  Figure 4

Figure 1 shows a wall-mountable embodiment of picture frame 10, while Figure 4 of the '308 Patent shows an alternative embodiment having a desk or table top mountable frame 10. (APP. 0056; APP. 0058; APP. 0062 at 6:17-26). Numerous other embodiments and variations are discussed throughout the '308 Patent. (APP. 0060-64).

The term "mountable" appears in multiple claims of the '308 Patent as a modifier for the terms "picture frame" and "display." For example, claims 1 and 29 recite "a mountable picture frame." (APP. 0063; APP. 0064). Claims 13 and 31 recite "a wall mountable display." (APP. 0063; APP. 0064). Claim 22 recites "a wall mountable or desk top mountable picture frame." (APP. 0064). Claim 1 of the '308 Patent is representative:

> 1.   A stand alone and **mountable** picture display for displaying still digital pictures, comprising:
>
> a **mountable** picture frame adapted to digitally display at least one still image thereon;
>
> the picture frame being a stand alone unit including:
>
> > a display screen for displaying the at least one still image stored in a memory;
> >
> > the memory for storing the at least one still image;
> >
> > an interface coupled to the memory for downloading still images to the memory; and
> >
> > control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(APP. 0063 (emphasis added)).

## B. The Accused Products Include Tablets That Can Serve as a Mountable Digital Picture Display Frame.

Appellees provide products that are accused of infringement, including Apple's iPad, Motorola's Xoom, HP's TouchPad, Dell's Streak, and Samsung's

Galaxy Tab. (APP. 1285-1340). ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Images of each of these

products, taken from Appellees' published advertising, promotional, and

instructional materials, are provided below:



Apple iPad



Samsung Galaxy Tab/Series 7 Slate



Dell Streak 5/7



HP TouchPad

 

Motorola XYBOARD and Xoom

Appellant contends that each of these products contain intrinsic features for "mounting" as a digital picture frame, including their size, shape, thinness, and lightweight nature, and the ports located at the bottom of the products.

### C. The Court construes the term "mountable" as "capable of being mounted," and also interprets the term as requiring an "intrinsic feature for mounting."

During claim construction, the parties submitted conflicting proposed constructions of the term "mountable" as used in claims 1, 6, 22, 29, and 31 of the '308 Patent. (APP. 0007). Appellant argued that the term "mountable" should be construed as "capable of being mounted," arguing that this was the term's ordinary and customary meaning and that the construction was supported by the language of the specifications when viewed as a whole. (APP. 0074-76). Appellees contended that "mountable" should be construed in a more limited fashion, as "having a support for affixing on a wall or setting on a desk or table top." (APP. 0182-86).

8

Following a claim construction hearing on November 6, 2013, the district court issued provisional claim constructions on January 3, 2014, provisionally construing the term "mountable" as "having a feature designed for mounting." (APP. 0010). The parties submitted additional briefing, and the district court issued of a final claim construction order on April 17, 2014, in which the final construction was "having a feature for mounting." (APP. 0010). The district court held that "the picture frame or display must have some intrinsic mounting feature," but rejected Appellees' proposed interpretation "that the mounting feature include all components needed to mount the frame or display." (APP. 0010). The lower court specifically provided that the need for external features or instrumentalities to accomplish the mounting does not render the product non-infringing. (APP. 0010).[2]

## D. The district court grants summary judgment in favor of Appellees,

████████████████████████████████████████████████████████████████
████████████████████████████

After the issuance of the final claim construction order, Appellees filed multiple motions for summary judgment, including a motion solely addressing whether the Accused Products infringed upon the '308 Patent under the district

---

[2] The district court also issued constructions of several other terms, which were the subject of subsequent dispositive motion briefing, but ultimately were not material to the district court's summary judgment order, which was limited to whether the accused products were infringing under the district court's construction of the term "mountable." (APP. 0027-33).

court's construction of the term "mountable." (APP. 0396). ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

In a Memorandum Opinion and Order issued on September 8, 2014, the district court granted Appellees' summary judgment motion that the accused products did not infringe upon the '308 Patent based solely on the "mountable" limitation. (APP. 0027-33). The district court held that there was no evidence of "some intrinsic feature for mounting" that rendered the tablet devices "mountable" for purposes of infringement. (APP. 0032). ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Judgment was thus issued in favor of Appellees (APP. 0001), and this appeal followed.

## SUMMARY OF THE ARGUMENT

By construing the term "mountable" as "having a feature for mounting" and then requiring such a feature to be "intrinsic," the lower court imported a limitation into the claims in the '308 Patent for a digital picture frame that was unsupported by the claim language, prosecution history, or any other source relevant to claim construction. "Mountable" should be given its plain and ordinary meaning, so that a jury may determine whether the accused products are sufficiently "mountable" to infringe upon the '308 Patent. The lower court's construction of "mountable" should therefore be reversed and vacated.

Even under this erroneous construction, the lower court further erred by failing to find that a jury could consider the size, shape, thinness, and lightweight nature of the accused products as features for mounting. Furthermore, the lower court disregarded substantial evidence and testimony regarding the use of the products' docking ports as a feature for mounting the products to be used as digital picture frames. By ignoring this evidence and instead holding that a product cannot be "mountable" through the additional use of external features or objects, the lower court failed to view the evidence in the light most favorable to the non-movant. Even if the Court does not vacate the lower court's construction of "mountable," the lower court's summary judgment of noninfringement should in any case be reversed.

# ARGUMENT

This Court's "*de novo* review of summary judgment of noninfringement requires two steps—claim construction, which [it] review[s] without deference, and infringement, which [it] review[s] to determine whether there was no genuine issue of material fact." *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1312 (Fed. Cir. 2007). The first step of claim construction is a "question of law" which is reviewed *de novo*. *Pitney Bowes, Inc. v. Hewlett Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). The second step involves a "question of fact," which is also reviewed *de novo*, "construing . . . all reasonable factual inferences in the non-movant's favor." *Id.* "[S]ummary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Id.*

## I.    The District Court Erred By Construing "Mountable" As "Having A Feature For Mounting" Because It Imported A Limitation Unsupported By The Claim Language.

### A. Claim Construction Standard

"It is the claims that define the metes and bounds of the patentee's invention. The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303,

1313 (Fed. Cir. 2005). Courts thus normally give claim terms their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312-13 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id.* at 1313. Moreover, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Thus, in claim construction, courts examine the patent's intrinsic evidence, which consists of the claims, the specification, and the prosecution history. *Id.* at 1314.

The claims themselves provide substantial guidance regarding the meaning of particular claim terms. *Id.* The term's context in the asserted claim can be very instructive. *Id.* "Claims must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). "[T]he specification is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). The specification may reveal a special definition given to a claim term by the patentee or a disclaimer or disavowal of claim scope. *Id.* at 1316. It may also "assist in resolving ambiguity

14

where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

However, when reading the claims in view of the specification, great care must be taken to avoid improperly importing limitations from the specification into the claims. *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments, we have repeatedly warned against confining the claims to those embodiments."); *Comark Comm'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.").

**B. The lower court's construction of "mountable" as "having a feature for mounting" improperly imported limitations into the claims. The term should instead be given its plain and ordinary meaning of "capable of being mounted."**

The lower court erred by construing the term "mountable" because it imported limitations that depart from its ordinary and customary meaning. The term "mountable" appears in numerous claims of the '308 Patent as a modifier for the terms "picture frame" and "display." (*See* APP. 0063-64 (claims 1, 13, 22, 29, 31)). Appellant asserts this term should be given its ordinary and customary meaning of "capable of being mounted." The lower court, however, rejected this construction, instead construing the term "mountable" as "having a feature for mounting." (APP.

15

0010). The lower court further interpreted this construction as requiring an "intrinsic" feature for mounting. (APP. 0010). In doing so, the district court improperly inserted a limitation into the claim of the patent that is unsupported by the language of the patent or its prosecution history. *Comark*, 156 F.3d at 1187.

The lower court's construction effectively requires that any infringing product be not just mountable, but have some sort of feature specifically designed for mounting included within the product itself that renders the product directly or independently mountable. This interpretation would exclude products that, through the use of features already included within the product, can be mounted using external sources that are used in tandem with the product at issue. However, the claims and specification of the '308 Patent clearly contemplate indirect mounting through the use of external features. Independent claims 13 and 31 each recite a "wall mountable ***display***." (APP. 0063-64). In the specification, the means for mounting are all described as being attached directly to frame 10, not to display 12. (APP. 0062 at 5:44-47 and 6:17-26). The specification therefore discloses that display 12 is ***indirectly*** mountable to the wall ***through*** frame 10 and, for example, attachment apparatus 28. (APP. 0062 at 5:44-47). Furthermore, the specification discloses that display 12 is ***indirectly*** mountable to a desk top ***through*** frame 10, hinge 56, stand 52, and bar 54. (APP. 0062 at 6:17-26).

16

The specification further teaches that the claimed "picture frame" is a unit used to replace a conventional picture frame. (APP. 0060 at 2:7-8). A conventional picture frame is clearly mountable, but anyone who has hung a conventional picture frame on a wall would understand that it is not independently or directly mountable to the wall without use of external means. Screws, nails, or some other kind of fasteners would still need to be attached to the wall in order to support the picture frame. A person of ordinary skill in the art would therefore understand that the word "mountable," as used in the claims of the '308 Patent, does not require the claimed "picture frame" or "display" to be independently or directly mountable without use of external means. To the contrary, such a person would understand that the claims would encompass a "picture frame" or "display" that is mountable through the use of other components or structures. *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1342-43 (Fed. Cir. 2013) (reversing a summary judgment of non-infringement because district court erred by construing "connected to" to require a direct connection).

The lower court's construction improperly inserts the term "intrinsic" into the claims. Under the lower court's construction, there now must be some sort of "intrinsic" feature of the products that allow for mounting without any external feature to facilitate it. Nothing in the specification or prosecution history of the '308

Patent requires the limitations the lower court used to modify the term "mountable."[3] On the contrary, the language of the '308 Patent covers a product that "may" be mounted in a variety of ways (with wall mounting and desk top mounting as two examples), which necessarily must cover an adaptable method of being "mountable." (*See* APP. 0060 at 1:56-57 ("The invention ***may*** be a wall mounted frame or a desk top frame.") (emphasis added); APP. 0060 at 2:24-26 ("The picture frame ***may*** include [sic] be wall mountable or desk top mountable.") (emphasis added)). The Detailed Description of Preferred Embodiments discusses one embodiment with "attachment apparatus 28 which may include hooks, clips, anchors, or equivalents" (APP. 0057 at Fig. 2; APP. 0062 at 5:45-47), and another embodiment with "stand 52 and a bar 54." (APP. 0058 at Fig. 4; APP. 0062 at 6:18-26). However, nothing in the '308 Patent or in any other source that may affect claim construction supports a construction that imports those structural limitations into the claims. *See Teleflex*, 299 F.3d at 1325 (holding that disavowal requires "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope").

The lower court also erred in construing "mountable" in such a way that a single "feature" must make an accused device "mountable" by itself. The '308 Patent teaches that a ***combination*** of features makes the claimed "picture frame" or

---

[3] For example, the word "support," which Appellees sought to import into the claim, does not even appear in the specification of the '308 Patent.

"display" mountable. For example, display 12 is wall mountable through a combination of features, including light weight, low profile (low thickness dimension), frame 10, attachment apparatus 28, and nails or screws placed in the wall (not shown). (APP. 0062-62 at 4:26-28, 5:45-47 and 6:21-23). Frame 10 is desk top mountable through a combination of features, including hinge 56, stand 52, and bar 54. (APP. 0062 at 6:17-26). The lower court disregarded these aspects of the claims in requiring a feature "intrinsic" for mounting, and erred because its construction inserts a limitation that a single, "intrinsic" feature must make the accused device "mountable." *See Phillips*, 415 F.3d at 1323 (expressly "reject[ing] the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment").

Unlike the constructions adopted by the lower court and proposed by Appellees, Appellant's proposed construction of "capable of being mounted" is consistent with and supported by the ordinary and customary meaning of the suffix "-able," which is "capable of, fit for or worthy of." (APP. 0108). The lower court rejected Appellant's proposed construction on the grounds that anything can technically be "mountable" and to give the term Appellant's proposed construction would render the term meaningless. (APP. 0009-10). In doing so, however, the lower court read the term in a vacuum, ignoring the context of the invention itself. *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We

19

cannot look at the ordinary meaning of the term . . . in a vacuum."). The lower court's construction ignores the other claim language (which limits the scope of the claim) and the remainder of the specification, both of which provide meaningful context for the proper construction of the "mountable" term. *See Phillips,* 415 F.3d at 1313 ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed claim appears, but in the context of the entire patent, including the specification."). A person of ordinary skill in the art reading the '308 Patent would understand that it is directed to a digital picture display frame, and applying this term to other types of products, as Appellees attempted to do before the lower court, disregards the context necessary to construe the term "mountable."

The Federal Circuit's decision in *Thorner* is particularly instructive. *Thorner* involved a patent covering a tactile feedback system for use with video games. *Thorner*, 669 F.3d at 1364. One of the terms that the lower court has asked to construe was "flexible," as used in the term "flexible pad." *Id.* The lower court rejected the patentee's proposed construction of "capable of being flexed" because it stated that "[m]any objects that are capable of being flexed are not flexible," such as a steel beam. *Id.* The lower court thus construed the term to mean "capable of being noticeably flexed with ease." *Id.*

20

On appeal, this Court vacated the lower court's claim construction order, holding that "the district court improperly limited the term." *Id.* at 1369. This Court determined that "[n]either the claims nor the specification" contained the requirement imposed by the district court; rather, the specifications only referred to a "semi-rigid" structure. *Id.* This Court thus held that "[t]he task of determining the degree of flexibility, the degree of rigidity that amounts to 'semi-rigid,' is part of the infringement analysis, not part of the claim construction." *Id.* In vacating and remanding, the Court held that the term "flexible" should be given its "plain and ordinary meaning," and that whether the products at issue infringe under that meaning is an issue for the trier of fact. *Id.* The facts here compel the same result. The term "mountable" should be given its plain and ordinary meaning, without any importations of limitations like "intrinsic mounting features," and a finder of fact should be given the opportunity to determine whether the products are sufficiently "mountable" to infringe upon the '308 Patent.

For these reasons, the Court should vacate the order construing "mountable" as "having a feature for mounting," and instead adopt Appellant's proposed construction of "capable of being mounted," which reflects the plain and ordinary meaning of the term and the context in which it is used. Defendants' effort to read limitations into the meaning of "mountable" should be rejected.

21

## II. The District Court Erred By Granting Summary Judgment Because There Were Facts That, Viewed In The Light Most Favorable To Appellant, Should Have Prevented Summary Judgment.

Because the lower court's claim construction was erroneous and should be reversed, the lower court's summary judgment under its construction of "mountable" should be vacated and the case remanded for consideration pursuant to the plain and ordinary meaning of the term. However, even under the lower court's erroneous construction, the lower court erred by granting summary judgment because the record, properly viewed in the light most favorable to Appellant, shows that a jury could find that Appellees' accused products infringe upon the '308 Patent.

In response to Appellees' summary judgment motion, ████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ The lower court erroneously disregarded these features and failed to view the evidence in the light most favorable to Appellant when it granted summary judgment. To the extent the Court need even reach this argument, the lower court's summary judgment order of September 8, 2014 should be reversed.

**A.** 

The first aspect of the Accused Products that Appellant identified as an intrinsic feature for mounting was a collection of characteristics that render the products capable of being mounted. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████

    ████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

A reasonable jury could find that these products are "mountable" under the lower court's claim construction of that term. ████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████    The district court erred by failing to recognize this perspective on the evidence, when it was required to view the evidence in the light most favorable to the non-movant. *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1341 (Fed. Cir. 2001).

**B. A reasonable jury could find that** ██████████████████ ████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████    As discussed below, the lower court erred by declining to view the evidence in the light most favorable to Appellant, as a jury could find that the docking ports were intrinsic features for mounting.

25

**1. Each of the accused products'** ██████████████████
████████████████████████████ **By failing to consider this evidence,**
**the**
lower court failed to view the evidence in a light most favorable to
Appellant and erred by granting summary judgment.

████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

█ ████████████████████████████████████████
██████████████████

26

## About Photos

iPad lets you carry photos with you, so you can enjoy them on the crisp, vibrant display wherever you are, and share them with family and friends. You can sync photos from your computer, import them from a digital camera or iPhone, or save them from email or the web. Use them in applications like Keynote, Numbers, and Pages, or send them in email messages, use them as wallpaper, or upload them to your MobileMe Gallery. You can use iPad as a photo frame that displays an animated slideshow of your images.

## Using Picture Frame

When iPad is locked, you can display an album of photos. This is a great way to enjoy iPad while charging it in an iPad Dock.

To change Picture Frame settings, go to Settings > Picture Frame, then set any of the following options:

- The transition you select is played between photos. The duration of the slideshow can't be changed.
- Picture Frame can zoom the image to focus on faces in the image. It can also randomly select one of the faces as the center of focus, if more than one face is present in the image. Picture Frame uses the face identification information in photos imported from iPhoto or Aperture on a Mac. Zooming in on faces isn't an option with the Origami transition.
- Picture Frame can display all photos, or just those in a specific Album, Faces, or Event category. Select an option, then refine your selection in the list that appears. The Faces, Albums, and Event selections are the same as those in the Photos application.

27

6. Touch ☰ **Menu** to display the **Make available offline** option. In addition to playing the videos that you add to your online library, you can play videos stored on your device's internal storage. Then you can view videos when you have no Internet connection. To do this, make some of your online videos available offline.

**Note:** Making videos available offline is very similar to making music available offline. For more information, refer to *"Making Online Music Available Offline"* on page 100.

### Viewing Categories of Photos and Videos

1. From a Home screen, touch ⊞ **Apps** → 🖼️ **Gallery**.
2. Touch a category to view it.
3. Touch ⓘ **Information** and touch a photo or video to display information about it. Touch ✕ in the pop-up to close it.
4. Depending on the way you chose the category, you can view it **By Album**, **By time**, **By location**, **By tags**, or **By size**. You can also change the category to view **Images and videos**, **Images only**, or **Videos only**.

5. Touch ▶️ **Slideshow** to view a slideshow of the photos and video thumbnails in the category. Touch the screen to stop the slideshow and view the photo or video being displayed.

### Viewing Photos and Videos

1. From a Home screen, touch ⊞ **Apps** → 🖼️ **Gallery**.
2. Touch a category to view it and then touch a photo or video thumbnail.
3. Touch the screen to show or hide Gallery options.
4. Touch the screen with two fingers or double-tap on the screen to zoom all the way in or out. For more information, refer to *"Pinch"* on page 22.
5. Sweep across the screen to display the next or previous photo or video. (Videos are indicated by the ▶️ **Play** button.) The current photo or video is outlined in the thumbnails at the bottom of the screen. Touch a thumbnail to view the photo or video it represents.

## Using the Slate PC Dock

By connecting the computer to the Slate PC Dock, you can use various types of ports.

### Installing/Removing the Dock

Before installing a computer to the docking station, make sure to disconnect all the cables connected to the computer. Installing and separating the Slate PC Dock after turning the computer off is recommended.

#### Installing the Slate PC onto the Dock

1   Insert your finger into the groove on the side of the Slate PC Dock to open the top cover of the Slate PC Dock.

2   Align the computer connector of the Slate PC Dock and the Slate PC Dock port at the bottom of the computer and connect them.

Computer Connector





frame

29

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

**2. The lower court's holding that** ████████████████████████████████

**contradicts the evidence and its own claim construction.**

The lower court held that the docking ports were not "intrinsic" features for mounting because the mountability depended upon extrinsic products and features. The lower court's position contradicts both its own claim construction and an objective view of the products themselves. In the Claim Construction Order, the lower court stated, "[T]he Court <u>does not go so far as to require that the mounting feature include all components needed to mount the frame or display</u>." (APP. 0010 (emphasis added). ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

Appellant presented substantial evidence to the lower court, including expert reports, testimony of Appellees' corporate witnesses, and Appellees' own

31

promotional materials and user guides, of how the docking ports are utilized to mount the accused products for use as digital picture frames. By disregarding this evidence and failing to view it in the light most favorable to Appellant, the lower court erred in issuing summary judgment in favor of Appellees on the grounds of noninfringement. Properly viewed, even under the lower court's erroneous construction, ████████████████████████████████████████████ ████████████████████. This Court should reverse and remand to the lower court for a determination of whether the accused products infringe by a finder of fact.

## CONCLUSION

For the reasons stated above, the district court erred in both construing the relevant terms of the '308 patent and finding that there was no genuine issue of material fact as to infringement. Appellant requests that the Court reverse this decision, and for all relief the Court deems just and proper.

Dated: February 5, 2015.                    */s/ Thomas C. Wright*
                                            Thomas C. Wright
                                            **CUNNINGHAM SWAIM, LLP**
                                            7557 Rambler Road, Suite 440
                                            Dallas, Texas 75231
                                            Telephone:  (214) 646-1495
                                            Facsimile: (214) 613-1163
                                            twright@cunninghamswaim.com

Steven E. Ross
**ROSS JOYNER PLLC**
1700 Pacific Avenue, Suite 3750
Dallas, Texas 75201
Telephone: (972) 661-9400
Facsimile: (972) 661-9401
sross@rossjoynerlaw.com

**ATTORNEYS FOR APPELLANT PROFECTUS TECHNOLOGY LLC**

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on this 5th day of February, 2015, by electronic means.

*/s/ Thomas C. Wright*
Thomas C. Wright
**CUNNINGHAM SWAIM, LLP**
7557 Rambler Road, Suite 440
Dallas, Texas 75231
Telephone:  (214) 646-1495
Facsimile: (214) 613-1163
twright@cunninghamswaim.com

## RULE 32(a)(7)(B) CERTIFICATION

I hereby certify that this Brief, in its entirety, contains a total of 7,553 words, and is thus compliant with the relevant type-volume limitation.

*/s/ Thomas C. Wright*
Thomas C. Wright

# ADDENDUM PURSUANT TO FEDERAL CIRCUIT RULE 28(a)(12)

## Contents

-Final Judgment of September 15, 2014

-Memorandum Opinion and Order of April 17, 2014

-Preliminary Order of August 26, 2014 and Sealed Memorandum Opinion and Order of September 8, 2014

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC | § | |
| | § | |
| v. | § | Case No. 6:11-cv-474 |
| | § | |
| HUAWEI TECHNOLOGIES CO., LTD., et al. | § | |

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC | § | |
| | § | |
| v. | § | Case No. 6:11-cv-674 |
| | § | |
| MOTOROLA MOBILITY LLC, et al. | § | |

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC | § | |
| | § | |
| v. | § | Case No. 6:11-cv-676 |
| | § | |
| HEWLETT-PACKARD Co., et al. | § | |

## FINAL JUDGMENT

In accordance with Court's Orders finally resolving all remaining claims (6:11-cv-474, Doc. Nos. Doc. No. 441, 443, 446), it is hereby **ORDERED, ADJUDGED, and DECREED** that final judgment be entered in these cases.

All relief not previously granted is hereby DENIED.

**It is SO ORDERED.**

**SIGNED this 15th day of September, 2014.**

_____

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC | § | |
| | § | |
| v. | § | Case No. 6:11-cv-474 |
| | § | (Consolidated—Lead Case) |
| HUAWEI TECHNOLOGIES | § | |
| CO., LTD., et al. | § | |

## MEMORANDUM OPINION AND ORDER

# TABLE OF CONTENTS

I.   BACKGROUND ................................................................................................... 3

II.  CLAIM CONSTRUCTION PRINCIPLES ...................................................... 3

III. CONSTRUCTION OF AGREED TERMS ....................................................... 6

IV.  CONSTRUCTION OF DISPUTED TERMS ..................................................... 6

  A.  MOUNTABLE ................................................................................................... 6
  B.  PICTURE FRAME .............................................................................................. 9
  C.  ACTIVATING THE DISPLAY SCREEN ................................................................ 12
  D.  CHANGING AN IMAGE DISPLAYED/CHANGING AN IMAGE OF THE DISPLAY SCREEN .............. 15
  E.  ADAPTED TO DIGITALLY DISPLAY AT LEAST ONE STILL IMAGE/ADAPTED TO DIGITALLY
      DISPLAY STILL IMAGES THEREON ..................................................................... 17
  F.  AUTOMATICALLY ........................................................................................... 20
  G.  DISPLAY SCREEN ............................................................................................ 22
  H.  STILL IMAGE .................................................................................................. 23

V.   CONCLUSION .................................................................................................. 24

APPENDIX A ............................................................................................................. 25

## I.  BACKGROUND

Plaintiff filed this action alleging infringement of U.S. Patent No. 6,975,308 (the '308 Patent). The '308 Patent issued on December 13, 2005. Titled "Digital Picture Display Frame," the patent relates to a provisional application filed on April 30, 1999.

On January 8, 2013, the Court entered a Provisional Opinion and Order providing the Court's constructions. The Court now enters this memorandum opinion and order setting forth the reasoning behind the Court's constructions.

## II.  CLAIM CONSTRUCTION PRINCIPLES

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

The claims of a patent define the scope of the invention. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). They provide the "metes and bounds" of the patentee's right to exclude. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). Accordingly, claim construction begins with and "remain[s] centered on the claim language itself." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).

Claim terms are normally given their "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Generally, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id* at 1313.

The best guide for defining a disputed term is a patent's intrinsic evidence. *Teleflex*, 299 F.3d at 1325. Intrinsic evidence includes the patent's specification and the prosecution history. *Id.*

The claims are part of the specification. *Markman*, 52 F.3d at 979. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314; *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation."). "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.

In addition to the claims, the specification's written description is an important consideration during the claim construction process. *See Vitronics*, 90 F.3d at 1582. The written description provides further context for claim terms and may reflect a patentee's intent to limit the scope of the claims. *See Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Grp., Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics*, 90 F.3d at 1583).

But care must be taken to avoid unnecessarily reading limitations from the specification into the claims. *Teleflex*, 299 F.3d at 1326; *see also Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983) ("That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims."). "[P]articular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water*, 381 F.3d at 1117; *see also Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

The prosecution history is also part of the intrinsic evidence. *Phillips*, 415 F.3d at 1317. It "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* "As in the case of the specification, a patent applicant may define a term in prosecuting a patent." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Statements made during the prosecution of the patent may limit the scope of the claims. *Teleflex,* 299 F.3d at 1326; *see Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (explaining that the doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution").

Finally, the Court may rely on extrinsic evidence to aid with understanding the meaning of claim terms. *Markman*, 52 F.3d at 981. Extrinsic evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 980. Extrinsic evidence is generally less useful or reliable, *Phillips*, 415 F.3d at 1317, and it should not be relied on when it contradicts the intrinsic evidence, *Markman*, 52 F.3d at 981.

## III.  CONSTRUCTION OF AGREED TERMS

The parties have agreed[1] to the construction of the following terms:

| Claim Term/Phrase/Clause: Claim No(s). | Agreed Definition |
|---|---|
| **portable memory device**<br>Claims 5, 31 | external storage media |
| **stand alone**<br>Claims 1, 2, 22, 29, 31 | independently satisfying each of the claimed features |

In view of the parties' agreements on the proper construction of these terms, the Court adopts the parties' agreed constructions.

## IV.  CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of eight terms or phrases in the patent in suit. Having considered the parties' briefing and their arguments during the claim construction hearing, the Court construes the disputed terms as outlined below.

### A.  *mountable*

Claims 1, 6, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| capable of being mounted | having a support for affixing on a wall or setting on a desk or table top |

---

[1] The parties agreed to one of these constructions based on the Court's proposals the day of the claim construction hearing.

This term appears in each of the independent claims as a modifier for the words "picture frame" and "display." The parties' dispute as to this term focuses on whether the mountable limitation must be accomplished with some feature intrinsic to the picture frame or whether this limitation can be met by modifying the picture frame or using a completely extrinsic mounting apparatus. For the reasons discussed below, the Court adopts the following construction: "having a feature for mounting."

### 1. The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a **mountable** picture frame adapted to digitally display at least one still image thereon;
>> the picture frame being a stand alone unit including:
>>> a display screen for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

Relying on a dictionary definition of the suffix "-able," Plaintiff argues that "mountable" simply means "capable of being mounted." Defendants argue that Plaintiff's construction would render this limitation meaningless. To make their point, Defendants provide examples of objects that have been mounted, but that would not fall within the plain and ordinary meaning of "mountable": a wine bottle, a basketball, and even a car. Furthermore, Defendants argue that

Plaintiff's broad construction conflicts with a position taken by the patentee in distinguishing the Suso prior art reference before the U.S. Patent and Trademark Office (PTO). Plaintiff responds that Defendants' construction improperly imports two limitations not supported by the claim language: (1) that the picture frame include a "support," a term that Plaintiff notes is never mentioned in the specification, and (2) that the picture frame be mountable to a wall or desktop, which Plaintiff claims is drawn from a preferred embodiment and should not be incorporated into the claim limitations. Finally, Plaintiff claims that the doctrine of claim differentiation precludes the Court from construing "mountable" to include a wall or desk limitation, as dependent Claim 6 includes that additional limitation.

It is undisputed that the mounting feature is not just a preferred embodiment; it is a part of the invention. Yet, Plaintiff's overly broad construction would render meaningless the term "mountable," which is used in every independent claim in the patent. The Court must give each term meaning. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim.").

Although the Court adopts Defendants' position that "mountable" requires more than simply rendering the frame capable of being mounted, the Court does not incorporate all of the additional limitations proposed by Defendants. Specifically, the Court does not agree with Defendant's proposed requirement that the picture frame must include a "support" to satisfy the mountable limitation. This position is not supported by the record. Similarly, the Court does not

incorporate into the construction of "mountable" the requirement that the device be mountable only to a wall or tabletop.[2] (Because the Court does not incorporate the wall or tabletop mountable limitation, Plaintiff's claim differentiation argument is moot.)

Finally, in the Court's Provisional Claim Construction Order, the Court construed the term "mountable" to mean "having a feature *designed for* mounting" (emphasis added). In order to alleviate any ambiguity created by the requirement that the feature must be "designed for" mounting, the Court eliminates that requirement. But the Court's construction remains that the picture frame or display must have some intrinsic mounting feature—not just a feature that could potentially render the frame or display *capable of being mounted*. Yet, the Court does not go so far as to require that the mounting feature include all components needed to mount the frame or display. For example, even the wall-mountable preferred embodiment would require use of some additional component (such as nails) to secure the frame to a wall. The '308 Patent at 5:44–47.

Having considered the record and the parties' arguments and for the reasons discussed above, the Court construes the disputed term **"mountable"** to mean **"having a feature for mounting."**

**B.** *picture frame*

Claims 1, 6, 7, 8, 22, 29

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a unit for displaying digital still images that is suitable for replacing a conventional picture frame | a structure that, when conventionally used, holds a tangible picture for display |

---

[2] The Court notes that during the claim construction hearing, Defendants did not oppose the Court's proposal to drop the "support" or wall/tabletop mountable requirements in the construction of "mountable."

Plaintiff contends that the claimed "picture frame" includes any device that can be used in place of a conventional frame to display digital images. Defendants counter that Plaintiff's construction is too broad and instead propose that a "picture frame" is a conventional picture frame that is adapted to display digital pictures. For the reasons discussed below, the Court adopts the following construction: "a unit used to replace a conventional picture frame."

### 1. The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a mountable **picture frame** adapted to digitally display at least one still image thereon;
>> the **picture frame** being a stand alone unit including:
>>> a display screen for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

Plaintiff claims that the patentee included in the specification an express definition of "picture frame": "a picture display for displaying digital pictures includes a mountable picture frame adapted to digitally display at least one still image thereon. The picture frame is a stand-alone unit used to replace a conventional picture frame." Plaintiff further argues that throughout the specification and claims, "picture frame" is used to mean a digital device. *See, e.g.*, the '308 Patent at 7:65–67 (listing a display screen as a feature of a picture frame). Plaintiff claims this

further supports its position that the patentee acted as lexicographer in defining "picture frame."

Defendants responds that the very language pointed to by Plaintiff illustrates that a "picture frame" as used in the patent is not inherently digital. Defendants note that the patent claims and specification indicate that a picture frame is *adapted* to display digital photos. Defendants argue that Plaintiff's construction improperly incorporates the digital component, thus rendering superfluous the "adapted to" language.

Defendant also argues that Plaintiff distinguished the Gombrich reference before the PTO by claiming that it "is not a picture frame" and further noting that "the present invention provides a picture frame and not a video monitor" (Doc. No. 257-7 at 4). Defendant further claims that Plaintiff's proposed construction improperly injects subjective opinion of what would be *suitable*.

The Court agrees with Plaintiff that the patentee included an express definition of "picture frame" in the specification. The specification explicitly states that "[t]he picture frame is a stand-alone unit used to replace a conventional picture frame." The '308 Patent at 2:7–8. This language distinguishes a picture frame from its plain and ordinary meaning of a conventional picture frame. With this language in the specification, the patentee is clearly expressing an intent to broaden the scope of a "picture frame" as used in the '308 patent to include any device that can replace a conventional picture frame. *Phillips*, 415 F.3d at 1316. But this definition still imposes limitations such as the size of the unit (*see, e.g.*, Doc. No. 257-4 at 14).

Yet Plaintiff inexplicably strays from the express definition and includes a subjective term: "*suitable* for replacing a conventional picture frame." This subjective requirement is contrary to law. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir.

2005). Instead, the Court adopts the express definition in the specification.

The Court also finds no merit in Defendants' argument related to the Gombrich reference. As Plaintiff notes, the patentee distinguished Gombrich because it had to connect to a computer to receive video and thus was not a stand-alone device (Doc. No. 257-7 at 4–6). Furthermore, the applicant's statements that the Gombrich reference is distinct from the claimed invention because Gombrich is a video monitor and not a picture frame does not compel this Court to limit picture frame only to a conventional picture frame.

Having considered the record and the parties' arguments and for the reasons discussed above, the Court construes the disputed term **"picture frame"** to mean **"a unit used to replace a conventional picture frame."**

**C.** *activating the display screen*

Claims 1, 22, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| making the display screen active or more active | powering on |

The parties dispute whether "activating the display screen" requires the device to go from a powered down to powered on state or, alternatively, whether the limitation requires only that the display screen becomes more active. For the reasons discussed below, the Court draws the line between the parties' positions and construes the term to mean "turning on the display screen."

### 1. The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a mountable picture frame adapted to digitally display at least one still image thereon;
>> the picture frame being a stand alone unit including:
>>> a display screen for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the display screen for automatically **activating the display screen** in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

Plaintiff argues that it is offering the ordinary and customary meaning of the word "activating." To support its plain and ordinary meaning argument, Plaintiff looks elsewhere in the patent, to discussions of activating pixels. *See* '308 Patent at 7:25–29. Plaintiff also argues that Defendants' position is too narrow and would exclude a preferred embodiment: when the screen saver feature prevents "burn in" by colors or intensity of pixels. '308 Patent at 4:57–67. Finally, Plaintiff points to the dictionary definition of "activate": "to make active or more active."

Defendants refute that the specification's reference to activating or altering pixels supports Plaintiff's proposed construction. Defendants further argue that during prosecution, Plaintiff explicitly stated that activating meant "powering on." Finally, Defendant discounts Plaintiff's reliance on the extrinsic dictionary definition as inconsistent with the intrinsic

evidence.

      Plaintiff's reliance on the discussions of pixels in the specification are misplaced. The discussion that pixels can be *altered* to prevent burn in has no bearing on the construction of "activating." '308 Patent at 4:57–67. Furthermore, the specification's discussion of activating pixels using transistors does not compel a construction that activating means something more than turning on, regardless of whether the object of the action is a pixel or an entire display screen.

      But Defendant's proposed construction extends too far in the opposite direction, requiring that the display screen be completely powered down and then power on when activated. Both parties agree that "activating" encompasses going from a powered off to a powered on state, but Defendant's proposed construction imposes this as the only permissible construction. This is not supported by the record. Defendant cites an embodiment that represents its construction, '308 Patent at 5:25–30, but the Court cannot limit the scope of the term to this single embodiment. *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Furthermore, Defendants cite another embodiment in which a motion sensor has a switch that *turns on* a particular function—such as the display screen—when triggered. '308 Patent at 6:35–36. Turning on a particular function is broader than *powering on* the function.

      Furthermore, Defendants' attempt to limit the construction based on the patentee's efforts to distinguish prior art is unavailing. The patentee distinguished the art for not *automatically* activating the display screen (Doc. No. 257-4 at 10). The patentee then listed a powering on sequence as one example of how the display screen might be activated (Doc. No. 257-4 at 11–

12). This permissive language does not limit the scope of the claim term. *See Omega Eng'g, Inc.*, 334 F.3d at 1325–26 (noting that "for prosecution disclaimer to attach . . . the alleged disavowing actions or statements made during prosecution be both clear and unmistakable").

The Court also finds unhelpful Plaintiff's circular dictionary definition: "to make active or more active." This definition is simply a recitation of the words the Court is seeking to define. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008) (noting that claim construction "usually requires use of words other than the words that are being defined").

The relevant discussions in the specification all reflect a feature that is being turned on (but not necessarily *powered* on). *See, e.g.*, '308 Patent at 4:57–67, 6:35–37, 7:25–29. Thus, in view of the intrinsic record, the Court construes the term **"activating the display screen"** to mean: **"turning on the display screen."**

### D. *changing an image displayed/changing an image of the display screen*

Claims 22, 29

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| altering or replacing an image displayed | switching the still image on the display screen to a different still image |

The parties agree that "changing" means replacing. But Plaintiff proposes that changing also encompasses altering an image. Defendants disagree. For the reasons discussed below, the Court adopts Plaintiff's position and construes the term to mean "altering or replacing an image displayed."

### 1. The Claim Language

Claim 29 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:

a mountable picture frame adapted to digitally display at
least one still image thereon;
the picture frame being a stand alone unit including:
a display screen for displaying the at least one still
image stored in memory;
the memory for storing the at least one still image;
an interface coupled to the memory for
downloading still images to the memory;
and
control circuitry coupled to the display screen for
automatically **changing an image of the display
screen** in accordance with an event, wherein the
event includes one of a change in light intensity,
and a sound detected in proximity of the display.
(emphasis added).

### 2.     Court's Construction

Plaintiff argues that the specification uses "change" to mean both altering, *see, e.g.*, '308

Patent at 5:7–13, and replacing. Defendants generally agree with Plaintiff's representation, but

argues that use of the phrase "a change in" means "alter," while use of the term "change" means

"replace."

Defendants further argue that the Court would promote ambiguity if it adopts two distinct

meanings of "change." Defendants also claim that the patentee explicitly disclaimed "change" to

mean "replace" while prosecuting the patent application before the PTO. Specifically,

Defendants note that the patentee indicated that "an image may be switched" upon the triggering

of a certain event, such as at a certain date or time (Doc. Nos. 257-17 at 7, 257-18 at 10).

Defendants' argument that "replace" and "alter" are inconsistent with one another is

without merit. As Plaintiff notes, these constructions simply encompass the full scope of what it

means to change something. And Plaintiff is entitled to the full scope of the claim terms. *See*

*Throner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012); *Anchor Wall*

*Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003). Furthermore,

Defendants have not demonstrated that the patentee's permissive example provided during the prosecution of the patent—i.e., "an image may be switched"—rises to the level of an explicit disclaimer. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 844 (Fed. Cir. 2010). Finally, as Defendants concede, Plaintiff's proposed construction is fully supported by the specification.

Accordingly, the Court adopts Plaintiff's proposed construction and construes the terms **"changing an image displayed"** and **"changing an image of the display screen"** to mean: **"altering or replacing an image displayed."**

> **E.**  *adapted to digitally display at least one still image/adapted to digitally display still images thereon*
>
> Claims 1, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction needed. Alternatively, if the Court determines that construction of this term is necessary, it should be construed as: "suited to digitally display at least one still image." | designed to display digital still images instead of use as a general purpose computer or cell phone |

The "adapted to digitally display" phrases are used to modify the terms "picture frame" and "display." The parties dispute (1) whether "adapted to" should be construed as "designed to," and (2) whether the Court should impose a negative limitation excluding computers and cell phones. For the reasons discussed below, the Court finds no construction is necessary for these terms.

> **1.  The Claim Language**

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:

> a mountable picture frame **adapted to digitally display at least one still image** thereon;
>> the picture frame being a stand alone unit including:
>>> a display screen for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

Plaintiff proposes plain and ordinary meaning of these terms, arguing against Defendants' use of "designed to" as too narrow. Plaintiff also argues that negative limitations are generally disfavored, absent an explicit disavowal. Plaintiff further claims that no such disavowal is found in the prosecution history.

Defendants point to language in the specification and prosecution history claiming it supports incorporating the purpose of the invention—that the invention is designed to display digital still images—as a limitation that the invention must be *designed* for that purpose. Defendants also point to the specification and prosecution history to support their proposed negative limitation that the adapted picture frame does not include a computer or cell phone

The Court finds no merit to Defendants' position that the construction of "adapted to" should include a limitation that the device was "designed to" function as a digital photo frame. Nothing cited by Defendants compels or even suggests this conclusion. *See* '308 Patent at 1, 42–44, 2:7–8, 3:48–53 and Doc. No. 257-7 at 5–6. Furthermore, "adapted to" is not ambiguous and Defendant has not shown that further construction is required. *See Phillips*, 415 F.3d at 1312

(noting that claim terms are normally given their "ordinary and customary meaning").

The Court further rejects Defendants' proposed negative limitation. Absent a specific disavowal, negative limitations are generally disfavored. *See Omega Eng'g*, 334 F.3d at 1322–23. Specifically, as to Defendants' proposal to exclude computers, Defendants look to the claims and portions of the specification where other functions are completed by a computer (i.e. transmitting data to the display). *See, e.g.*, '308 Patent at 8:15–17. According to Defendants, this suggests that the invention is distinct from a computer. Defendants also note that the specification indicates that the functionality and storage capacity of a general purpose computer may not be suited for the limited purpose of the invention. '308 Patent at 22–28. Defendants similarly argue that this supports their proposed negative limitation that the invention cannot be a computer. Although Defendants point to several references to computers within the specification, none of these rise to the level of a clear disavowal. *See Omega Eng'g*, 334 F.3d at 1325.

As to cell phones, Defendants argue that the patentee explicitly distinguished the present invention from cell phones while prosecuting the patent application before the PTO. The patentee distinguished the Suso prior art on the basis that Suso was a cell phone, and thus "completely unsuitable" for purposes of the present invention (Doc. No. 257-4 at 13–14). Defendants argue that this amounts to an explicit disclaimer of all cell phones. Defendant claims this was a disavowal of all cell phones. The Court does not find that the patentee's discussion of distinguishing of Suso rises to the level of a clear disclaimer (Doc. No. 257-4 at 13–14). *See Omega Eng'g*, 334 F.3d at 1325.

Accordingly, the Court determines that no construction is necessary for the terms "adapted to digitally display at least one still image" and "adapted to digitally display still images thereon."

F.    *automatically*

Claim 1, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction needed. Alternatively, if the Court determines that construction of this term is necessary, it should be construed as: "without further effort on the part of the user" | without user manipulation of the controls of the device |

The parties dispute what level of human interaction—if any—is permitted under the meaning of "automatically." For the reasons discussed below, the Court finds no construction is necessary for this term.

### 1.    The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a mountable picture frame adapted to digitally display at least one still image thereon;
>> the picture frame being a stand alone unit including:
>>> a display screen for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the display screen for **automatically** activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

## 2. Court's Construction

Plaintiff proposes the plain and ordinary meaning of "automatically." Plaintiff challenges Defendants' construction as conflicting with at least three preferred embodiments. *See Globetrotter Software*, 362 F.3d at 1381.

In contrast, Defendant seeks to impose a dictionary definition of "automatically." Defendant also argues that the patentee added the "automatically" limitation during prosecution to overcome the Jacklin prior art reference (Doc. No. 257-4 at 11). In doing so, Plaintiff distinguished Jacklin as requiring manual operation of the setup menu and "some conscious effort to manipulate the controls of the device" (Doc. No. 257-4 at 11). Similarly, the patentee distinguished the Hsien prior art reference by noting that the claimed invention requires "no active intervention on the part of the user" (Doc. No. 257-4 at 12).

The Court finds that the plain and ordinary meaning controls. The broad disclaimers alleged by Defendant are based on manipulation of controls and have no bearing on whether human interaction (such as motion) can be a triggering event. Thus, this prosecution history does not support Defendants' proposed construction. Furthermore, Defendants' reliance on extrinsic evidence is misplaced in the absence of an ambiguity. *See Vitronics*, 90 F.3d at 1583 ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence.").

Accordingly, the Court determines that no construction is necessary for the term "automatically."

G.     *display screen*

Claims 1, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction needed. | viewable surface for presenting digital still images large enough to allow viewers to see the digital still images from a distance of more than a foot or two |

The parties dispute whether to incorporate a limitation related to the size of the screen into the construction of "display screen." Plaintiff argues that this concern is already addressed in the construction of "picture frame." Defendant counters that Plaintiff disclaimed all small-screen devices when distinguishing the Suso reference. Defendant notes that Plaintiff specifically limited the invention to screens "large enough to allow viewers to see displayed photographs from a distance of more than a foot or two" (Doc. No. 257-4 at 14).

1.     **The Claim Language**

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a mountable picture frame adapted to digitally display at least one still image thereon;
>> the picture frame being a stand alone unit including:
>>> a **display screen** for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the **display screen** for automatically activating the **display screen** in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

## 2. Court's Construction

As argued by Plaintiff, the Court previously incorporated the issue of screen size into its construction of "picture frame." The more specific statement from the prosecution history related to viewing pictures from "more than a foot or two" is not a "clear and unmistakable" surrender of claim scope and thus is not a prosecution disclaimer. *See Omega Eng'g*, 334 F.3d at 1326. Accordingly, the Court determines that no construction is necessary for the term "display screen." *See id.* at 1323 ("We indulge a heavy presumption that claim terms carry their full and customary meaning." (quotations omitted)).

### H. *still image*

Claims 1, 2, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction needed. Alternatively, if the Court determines that construction of this term is necessary, it should be construed as: "non-moving image." | non-moving graphic picture i.e., not video |

Defendants claim that their proposed constructed is directed to Plaintiff proffering a single frame of video as a "still image." Plaintiff advocates for the plain and ordinary meaning.

### 1. The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
> > a mountable picture frame adapted to digitally display at least one **still image** thereon;
> > the picture frame being a stand alone unit including:
> > > a display screen for displaying the at least one **still image** stored in a memory;
> > > the memory for storing the at least one **still image**;
> > > an interface coupled to the memory for

downloading **still images** to the memory; and

control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2.    Court's Construction

The Court finds that the plain and ordinary meaning of "still image" does not encompass video, even when considered as a string of single frames. With this in mind, the Court determines that no construction is necessary for the term "still image." *See Omega Eng'g*, 334 F.3d at 1323 ("We indulge a heavy presumption that claim terms carry their full and customary meaning." (citations omitted)).

## V.    CONCLUSION

For the forgoing reasons, the Court adopts the constructions as set forth above, and as listed in the attached chart. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**It is SO ORDERED.**

**SIGNED this 16th day of April, 2014.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

**APPENDIX A**

| Claim Term | Claims | Court's Construction |
|---|---|---|
| **portable memory device** | 5, 31 | Claims 5, 31 |
| **stand alone** | 1, 2, 22, 29, 31 | independently satisfying each of the claimed features |
| **mountable** | 1, 6, 22, 29, 31 | having a feature for mounting |
| **picture frame** | 1, 6, 7, 8, 22, 29 | a unit used to replace a conventional picture frame |
| **activating the display screen** | 1, 22, 31 | turning on the display screen |
| **changing an image displayed/changing an image of the display screen** | 22, 29 | altering or replacing an image displayed |
| **adapted to digitally display at least one still image/adapted to digitally display still images thereon** | 1, 22, 29, 31 | No construction necessary |
| **automatically** | 1, 22, 29, 31 | No construction necessary |
| **display screen** | 1, 22, 29, 31 | No construction necessary |
| **still image** | 1, 2, 22, 29, 31 | No construction necessary |

# United States District Court
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC | § | |
| | § | |
| v. | § | **Case No. 6:11-cv-474-MHS** |
| | § | **Consolidated—Lead Case** |
| HUAWEI TECHNOLOGIES CO., LTD., ET AL. | § | |

## PRELIMINARY ORDER ON SUMMARY JUDGMENT

Before the Court is Defendants' Sealed Motion for Summary Judgment of Noninfringement Regarding the Mountable Limitation (Doc. No. 408). Upon careful consideration of the parties' arguments and the applicable law, the Court finds that Defendants' motion is meritorious. Accordingly, the Court **GRANTS** the Defendants' motion for summary judgment in its entirety, and dismisses all of Plaintiff's pending claims against Defendants. A memorandum opinion will follow in due course.

It is SO ORDERED.

SIGNED this 26th day of August, 2014.


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC | § | <span style="color:red">**SEALED**</span> |
| | § | |
| v. | § | Case No. 6:11-cv-474 |
| | § | (Consolidated—Lead Case) |
| | § | ***SEALED*** |
| HUAWEI TECHNOLOGIES | § | |
| CO., LTD., et al. | § | |

## MEMORANDUM OPINION AND ORDER







